UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CINDY DAVIS,

                            Plaintiff,

v.                                                         6:09-CV-186
                                                                  (LEK/GHL)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                            Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

EMPIRE JUSTICE CENTER               LOUISE MARIE TARANTINO, ESQ.
Counsel for Plaintiff
119 Washington Avenue
2nd Floor
Albany, NY 12210

SOCIAL SECURITY ADMINISTRATION    ANDREEA LECHLEITNER, ESQ.
Office of General Counsel                    Special Assistant U.S. Attorney
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION[1]

**I.    BACKGROUND**

    **A.    Procedural History**

On March 27, 2006, Plaintiff Cindy Davis protectively applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"). *See* Administrative Transcript ("T") 84-88, 327-32. On June 16, 2006, her applications were denied by the Social Security

---

[1] This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

Administration. T 50-54, 335-39. On December 11, 2007,[2] a hearing was held before an Administrative Law Judge ("ALJ"). T 343-63. On April 25, 2008, the ALJ determined that Plaintiff was not disabled. T 12-22.

Plaintiff appealed to the Appeals Council. On December 22, 2008, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T 5-7. Plaintiff commenced this action on February 18, 2009. Dkt. No. 1.

### B. Plaintiff's Contentions

Plaintiff makes the following claims:

1. The ALJ erred by failing to find that Plaintiff's back impairment met a listed impairment. Dkt. No. 12 at 16 n.23.

2. The ALJ failed to properly evaluate the treating sources' opinions. Dkt. No. 12 at 14-18.

3. The residual functional capacity ('RFC") determination was not supported by substantial evidence. Dkt. No. 12 at 18- 22.

4. The ALJ should have found Plaintiff credible. Dkt. No. 12 at 22-24.

5. The Commissioner erred by applying the Medical-Vocational Guidelines. Dkt. No. 12 at 24-25.

Defendant disagrees, and argues that the decision finding Plaintiff not disabled should be affirmed. Dkt. No. 14.

---

[2] More than one year lapsed between the day Plaintiff was initially denied benefits and the day that a hearing was held due to issues regarding the timeliness of Plaintiff's requests for hearings. T 25, 27-31, 64-66, 56-58, 333.

## II. APPLICABLE LAW

### A. Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520. "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which

3

> enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.*

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587-88 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the

4

determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

**III.     THE PLAINTIFF**

At the time of the administrative hearing, Plaintiff was forty-three years old. T 347. She obtained her general equivalency diploma. T 110. She lived in an apartment with her seventeen-year old disabled son. T 348.

From 1984 to 1997, Plaintiff was "home raising [her] children and [her] spouse was working." T 90. From 1998 to 2005, Plaintiff worked as a certified nurses' aide. T 106. From 2006 to 2007, she worked part-time as a housekeeper. *Id.*

Plaintiff alleges disability due to throat cancer, back pain, and depression. T 105.

5

**IV.    THE ALJ'S DECISION**

 In determining that Plaintiff was not disabled, the ALJ made the following findings:

1. Plaintiff had not engaged in substantial gainful activity since the alleged onset date. T 17-18.

2. Plaintiff's "cancer of the larynx (in remission), lumbar degenerative disease, depression, and anxiety," were severe impairments. T 18.

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. T 19.

4. Plaintiff had the physical RFC to perform light work. In addition, Plaintiff had the mental RFC to understand, remember, and carry out simple tasks, learn new simple tasks, maintain attention and concentration, and work in a low stress environment. T 19-20.

5. Plaintiff was unable to perform any past relevant work. Considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Therefore, Plaintiff was not disabled. T 20-21.

**V.    DISCUSSION**

 **A.    Listed Impairment**

 Plaintiff argues that the ALJ erred by failing to find that her back impairment met Listing 1.04, and points out that the ALJ failed to even discuss this listing. Dkt. No. 12 at 16 n.23. Defendant argues that the ALJ properly found that Plaintiff's back impairment did not meet or medically equal this listed impairment. Dkt. No. 14 at 6-8.

 A claimant is automatically entitled to benefits if his or her impairment(s) meets criteria set forth in "the Listings." 20 C.F.R. § 404.1520(d). The burden is on the plaintiff to present medical findings that show that his or her impairments match a listing or are equal in severity to a listed impairment. *Zwick v. Apfel*, No. 97 Civ. 5140, 1998 WL 426800, at *6 (S.D.N.Y. July

6

27, 1998). In order to show that an impairment matches a listing, the claimant must show that his or her impairment meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 404.1525(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Sullivan*, 493 U.S. at 530.

However, in cases in which the disability claim is premised upon one or more listed impairments of appendix 1, "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." *Berry*, 675 F.2d at 469. While a court may be able "to look to other portions of the ALJ's decision" and to "credible evidence" in finding that his determination was supported by substantial evidence, the Second Circuit has noted that "[c]ases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record . . . . In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision." *Id.* (citations omitted). Thus, while an ALJ is not obligated to address specifically each piece of evidence in his decision, *Jones v. Barnhart*, No. CV-04-2772, 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004), he is not excused from addressing an issue central to the disposition of the claim. *See Ramos v. Barnhart*, No. 02 Civ. 3127, 2003 WL 21032012, at *10 (S.D.N.Y. May 6, 2003) (citing, *inter alia*, *Ferraris*, 728 F.2d at 587 ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.")). Moreover, "'**[w]here the claimant's**

7

**symptoms as described by medical evidence appear to match those described in the Listings, the ALJ must provide an explanation as to why the claimant failed to meet or equal the Listings**.'" *Pitcher v. Barnhart*, No. 5:06-CV-1395, 2009 WL 890671, at *11 (N.D.N.Y. Mar. 30, 2009) (Bianchini, M.J.) (quoting *Brown ex rel. S.W. v. Astrue*, No. 1:05-CV-0985, 2008 WL 3200246, at *10 (N.D.N.Y. Aug. 5, 2008)).

Here, the ALJ summarily concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. T 19. The ALJ provided absolutely no rationale for this finding. *Id.*

Defendant concedes that the ALJ provided no "express rationale" for this determination. Dkt. No. 14 at 7. However, he argues that this omission provides no basis for reversal because a review of the ALJ's decision and the evidence of record indicates that Plaintiff's back impairment did not meet or medically equal Listing 1.04A. *Id.*

Listing 1.04A provides as follows:

Disorders of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); ....

20 C.F.R. Pt. 404, Subpt. P, App. 1. Each of these requirements will be discussed in turn.

The first requirement to meet Listing 1.04A is "evidence of nerve root compression characterized by neuro-anatomic distribution of pain." 20 C.F.R. Pt. 404, Subpt. P, App. 1. An

8

MRI of Plaintiff's lumbar spine revealed a disc herniation at L5-S1, which "does come in close proximity to both descending nerve roots **and may abut their nerve root sheaths. Compression of the descending nerve roots with axial loading may be present.**" T 242 (emphasis added). The MRI also revealed "marked degenerative disc change with moderate diffuse annular disc bulge at L4-5 which is stable. **Compression of the left descending nerve root may be present with axial loading**." *Id.* (emphasis added). In addition, another MRI revealed a central disc herniation at L4-5, **which may "possibly [be] affecting the left L5 nerve root minimally**." T 305 (emphasis added).

Moreover, Plaintiff consistently complained of neuro-anatomic distribution of pain. T 203, 273, 275, 310, 323. She testified at the hearing that the pain radiated up her neck, and down her left leg. T 351, 359. Further, Aimee Pearce, M.D. assessed Plaintiff as suffering from lumbar radiculopathy.[3] T 274; *see also* T 275.

The second requirement to meet Listing 1.04A is "limitation of motion of the spine." 20 C.F.R. Pt. 404, Subpt. P, App. 1. During an examination by Myra Shayevitz, M.D., Plaintiff exhibited limited range-of-motion in the lumbar spine. T 205. Defendant himself notes that a reduced range-of-motion in the lumbar spine was observed during this examination. Dkt. No. 14 at 13. Plaintiff also exhibited a "decreased range of motion due to pain" during an orthopaedic consultation with Rudolph Buckley, M.D. T 324-25.

The third requirement to meet Listing 1.04A is "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt.

---

[3] Radiculopathy is a disease of the nerve roots. *Dorland's Illustrated Medical Dictionary* 1595 (31st ed. 2007).

9

404, Subpt. P, App. 1. Plaintiff's treating physician, Zoltan Teglassy, M.D., noted that Plaintiff exhibited decreased strength during a follow-up appointment for Plaintiff's back pain. T 310.

The fourth requirement to meet Listing 1.04A is a "positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1. The record reveals several instances during which Plaintiff exhibited positive straight leg raising. T 273-75.

In sum, the evidence indicates that Plaintiff may meet Listing 1.04A.[4] Thus, the Court is unable to conclude that the ALJ properly found that Plaintiff met no listing. Accordingly, it is recommended that this case be remanded in order to allow the ALJ to explain why Plaintiff did not meet Listing 1.04A. *See Pitcher*, 2009 WL 890671, at *12 (holding similarly).

### B. Residual Functional Capacity and Treating Physicians

Plaintiff argues that the RFC determination was not supported by substantial evidence. Dkt. No. 12. Defendant argues that the RFC finding was supported by substantial evidence. Dkt. No. 14.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

Plaintiff's primary challenge to the RFC determination is her belief that the ALJ

---

[4] I note that the ALJ discussed only some of this evidence while addressing other steps.

10

improperly weighed opinions rendered by two of her treating physicians. Dkt. No. 12 at 15-18. Defendant argues that the ALJ properly weighed these opinions. Dkt. No. 14 at 8-19.

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because the treating source is inherently more familiar with a claimant's medical condition than are other sources." *Schisler v. Bowen*, 851 F.2d 43, 47 (2d Cir. 1988). However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

      1.      **Dr. Firooz Tabrizi**

In determining Plaintiff's mental RFC, the ALJ discussed the opinion of Firooz Tabrizi, M.D., Plaintiff's treating psychiatrist. T 19-20. Dr. Tabrizi opined that Plaintiff had moderate restrictions in her abilities to understand and remember simple instructions, and to carry out simple instructions. T 296. He also opined that Plaintiff had marked restrictions in her abilities to make judgments on simple work-related decisions, understand and remember complex

11

instructions, carry out complex instructions, and make judgments on complex work-related decisions. *Id.*

Dr. Tabrizi also opined that Plaintiff had marked restrictions in her abilities to interact appropriately with the public, supervisor(s), and co-workers, and to respond appropriately to usual work situations and to changes in a routine work setting. T 297. He also opined that Plaintiff had a moderate restriction in her ability to respond appropriately to changes in a routine work setting. *Id.*

The ALJ afforded this opinion "little weight because it is not well supported by the medical record." T 19. However, Dr. Tabrizi's progress notes, which are replete with his notations that Plaintiff was depressed and anxious, support the assessment. T 293-95. Moreover, Dr. Tabrizi specifically stated the factors that supported his assessment. T 296-97. He indicated that Plaintiff was anxious and depressed; she worried; her mind raced; her sleep was poor; she felt stressed; and she cried at times. T 296.

The ALJ also based his determination on a report from a consultative orthopaedist, Dr. Buckley. T 19 (citing T 323). The ALJ cited this report for the proposition that Plaintiff "recently exhibited no depression or anxiety." *Id.* In his report, Dr. Buckley noted that Plaintiff exhibited no depression or anxiety. T 323. However, as stressed by Plaintiff, Dr. Buckley performed an **orthopaedic** examination, focusing on Plaintiff's **orthopaedic** complaints. Dkt. No. 12 at 20. Indeed, his report states that Plaintiff "presents today for evaluation with complaints of back and leg pain." T 323.

The ALJ also explained that Plaintiff's "depression has responded to medication." T 20

12

(citing T 277). He cited a progress note from St. Elizabeth's Family Practice in which it is noted that Plaintiff's "response to Prozac is encouraging." T 277. **However, the next sentence of the progress note states, "[h]owever, she does seem to have significant residual depressive symptoms. We will . . . increase her dose of Prozac."** *Id.* (emphasis added). It was also noted that she suffered from insomnia and experienced "underlying anxiety." *Id.*

The ALJ also stated that Dr. Tabrizi's opinion was "inconsistent" with Plaintiff's activities. T 20. The ALJ pointed out that Plaintiff testified that she drove, performed activities of daily living, followed news on the television, shopped, prepared meals, and performed housework. *Id.* It is unclear how Dr. Tabrizi's opinion conflicts with these activities.

In light of the foregoing, the Court is unable to find that the ALJ's assignment of "little" weight to Dr. Tabrizi's opinion was supported by substantial evidence.

### 2. Dr. Zoltan Teglassy

In determining Plaintiff's physical RFC, the ALJ discussed an opinion rendered by Dr. Teglassy, a treating physician. T 20. Dr. Teglassy opined that Plaintiff could never lift ten pounds, but could occasionally carry ten pounds; Plaintiff could sit for eight hours without interruption, but could stand or walk for only one hour, each, without interruption in an eight-hour workday. T 300. He also indicated that Plaintiff was limited in her abilities to use her hands and feet, and had limitations in her abilities to perform postural activities. T 301-03.

The ALJ assigned "little" weight to this opinion. T 20. The ALJ's only explanation was the following: "The extreme physical limitations set forth by Dr. Teglassy are not consistent with the relatively mild nature of the claimant's degenerative disc disease or her daily activities." *Id.*

13

(citing T 204, 241-43, and "testimony").

However, as previously determined, Plaintiff may meet Listing 1.04A. Therefore the Court is unable to conclude that the ALJ's finding that Plaintiff's degenerative disc disease was "relatively mild" was correct. Moreover, the ALJ vaguely states that Plaintiff's daily activities are "inconsistent" with Dr. Teglassy's opinion. T 20. It is unclear how the activities conflict with the opinion.

In light of the foregoing, the Court is unable to find that the ALJ's assignment of "little" weight to Dr. Teglassy's opinion was supported by substantial evidence.

### 3. Evidence Cited by the ALJ

In addition to challenging the ALJ's evaluation of her treating sources' opinions, Plaintiff challenges the evidence cited by the ALJ for support of the physical RFC determination.[5] Dkt. No. 12. The ALJ stated that the RFC determination was supported by, *inter alia*, Dr. Shayevitz's opinion and an RFC assessment completed by an individual from a State agency. T 20.

First, Plaintiff points out that Dr. Shayevitz noted that Plaintiff would have difficulty with repetitive overhead lifting. Dkt. No. 12 at 19. Indeed, Dr. Shayevitz opined that Plaintiff would have difficulty lifting overhead. T 206. The Court also notes that the RFC assessment completed by the individual from the State agency indicates that Plaintiff should avoid repetitive overhead activities. T 221. However, the RFC determination inexplicably fails to provide for

---

[5] Plaintiff included a section in her brief that at first blush appears to challenge the evidence cited by the ALJ for the mental RFC determination. Dkt. No. 12 at 21-22. However, after a review, it appears that this section, in essence, is a challenge to the ALJ's step five determination. *See id.* (citing T 21 - step five determination). Accordingly, the Court will touch upon this issue in Section (V)(D) of this Report-Recommendation.

14

such limitations.

Second, Plaintiff points out that Dr. Shayevitz opined that Plaintiff "might have difficulty with prolonged hours of sitting, standing, and walking." Dkt. No. 12 at 19 (citing T 206). Plaintiff argues that this finding conflicts with the RFC determination that she could perform light work because light work requires standing or walking for six hours in an eight-hour day, or sitting most of the time. Dkt. No. 12 at 19. Defendant apparently argues that there is no conflict because Dr. Shayevitz never specifically stated that Plaintiff was unable to perform the amount of standing or walking required for light work, and that "light work does not require uninterrupted standing and walking for hours on end." Dkt. No. 14 at 14-15.

While it is true that standing or walking is performed off-and-on, and that sitting may occur intermittently during the remaining time for at least some jobs in the light work category, 20 C.F.R. §§ 404.1567(b), 416.967(b); SSR 83-10, 1983 WL 31251, at *5-6 (S.S.A. 1983), a job is also in the light category when it involves **sitting most of the time** with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ did not specify the kind of light work that Plaintiff could perform. In fact, he stated that Plaintiff had the RFC "for the full range of light work." T 21. Thus, Defendant's argument is unpersuasive because Dr. Shayevitz's finding that Plaintiff might have difficulty with prolonged hours of sitting, standing, and walking appears to conflict with the RFC determination that Plaintiff could perform light work, which may consist of a job involving sitting most of the time.

For all of the foregoing reasons, the Court is unable to find that the RFC determination is supported by substantial evidence. Accordingly, I recommend that the matter in this regard be

15

reversed and remanded.

### C. Credibility

Plaintiff argues that the ALJ erred in his determination that Plaintiff was not totally credible. Dkt. No. 12. Defendant argues that the ALJ properly determined Plaintiff's credibility. Dkt. No. 14.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of

16

the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

  In this case, the ALJ found that Plaintiff's subjective complaints were "only partially credible." T 20. The ALJ provided four reasons for this determination. First, the ALJ stated that Plaintiff's "activities" were "inconsistent with **total** disability." *Id.* (emphasis added). However, a "claimant need not demonstrate that he is completely helpless or totally disabled." *Rivera v. Schweiker*, 717 F.2d 719, 722 (2d Cir. 1983). Moreover, the mere fact that an individual is mobile and able to engage in some light tasks at his home does not alone establish that she is able to engage in substantial gainful activity. *Lecler v. Barnhart*, No. 01 Civ. 8659, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Gold v. Sec. of Health, Ed. & Welfare*, 463

F.2d 38, 41 n.6 (2d Cir. 1972)).

The ALJ pointed to Plaintiff's testimony that she cooks, cleans, does laundry, shops, takes care of her disabled son, drives, and could use public transportation if needed. T 20. However, Plaintiff does laundry only **twice per week** and shops only **once per month**, which the ALJ himself noted. T 20. Plaintiff also stated that it "took her awhile" to do housework "because of her back condition, and she had "a lot of trouble" cleaning, and needed help vacuuming and cleaning her house. T 114, 116. She also stated that she had "a lot of trouble" cooking, and prepared only "simple meals." T 114, 115. She also stated that her **monthly** food shopping took her "awhile because I have to constantly stop because of the pain." T 116, 117. With regard to her son, the only care that she provided to him was giving him medications when he woke up, and driving him to medical appointments. T 353, 355. She further stated that regarding her ability to drive, she drove a **total** of ten-to-fifteen miles in **one week** if she or her son had medical appointments. T 355.

Second, the ALJ stated that Plaintiff was only "partially credible" because the "objective clinical findings and MRI results do not provide strong support for a disabling back disorder." T 20. However, as previously discussed, Plaintiff may meet Listing 1.04A.

Third, the ALJ stated that Plaintiff was only "partially credible" because a "specialist recently recommended conservative treatment, rather than surgery." T 20 (citing T 322-26). The specialist, Dr. Buckley, recommended that Plaintiff attend physical therapy. T 325. He made no mention of surgery, as the ALJ suggests.

Fourth, the ALJ stated that Plaintiff's "sporadic work history and limited earnings record

18

do not bolster her credibility." T 20. It is unclear how Plaintiff's work history and earnings record fail to "bolster" her credibility. Plaintiff indicated that she did not work from 1984 to 1997 because she was "home raising [her] children and [her] spouse was working." T 90. From 1998 to 2006, she consistently worked in only a few different positions. T 106.

In light of the foregoing, the Court is unable to find that the credibility determination was supported by substantial evidence. Accordingly, the matter in this regard should be reversed and remanded.

### D. Medical Vocational Guidelines

Plaintiff argues that the ALJ erred by relying on the Medical-Vocational Guidelines ("the Grids") to determine that she was not disabled. Dkt. No. 12 at 24-25. Specifically, Plaintiff argues that her non-exertional impairments and pain significantly erode the occupational base, making application of the Grids inappropriate. *Id.* at 25; *see id.* at 21-22. Defendant argues that the ALJ properly relied on the Grids. Dkt. No. 14 at 22-24.

Because the Court is recommending remand for several reasons, the Court recommends remand on this issue as well. Also, I note that the ALJ made no mention at this step of whether Plaintiff had any non-exertional impairments. Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations. *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

**WHEREFORE**, for the reasons set forth above, it is hereby

**RECOMMENDED**, the Commissioner's determination of no disability be **VACATED**,

19

and the matter **REMANDED** to the agency for further consideration.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 3, 2010
      Syracuse, New York

                                         George H. Lowe
                                         United States Magistrate Judge